UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


WILMER PAYNE,                          )
                                       )
          Plaintiff,                   )
                                       )          No.: 3:14-CV-346-PLR-CCS
v.                                     )
                                       )
SEVIER COUNTY, TENNESSEE, *et al.*,    )
                                       )
          Defendants.                  )
                                       )


## MEMORANDUM AND ORDER


Plaintiff filed a timely complaint for violation of civil rights pursuant to 42 U.S.C. § 1983 on July, 24, 2014. First Med, Inc. ("First Med") filed a motion to dismiss this original complaint resulting in the submission of an amended complaint on September, 16 2014. During the pendency of the action, the Plaintiff entered a settlement agreement with First Med, Nurse Mason, Nurse Hippler, Nurse Timbrook, Mr. Thomason, and Dr. Roberts. The remaining defendants—Sevier County, Tennessee, Jail Administrator Larry McMahan, and Sevier County Sheriff Ronald Seals—filed a motion for summary judgment on August 20, 2015. Plaintiff responded in opposition on September 24, 2015, but later entered a stipulation of dismissal with respect to McMahan and Seals on December 16, 2015. Before the Court are Sevier Count's motion for summary judgment and motions by the parties asking the Court to exclude testimony by opposing party's expert witnesses.

## I. BACKGROUND

Plaintiff was incarcerated at the Sevier County Jail on March 29, 2013 pursuant to a guilty plea on a misdemeanor domestic assault and scheduled to be released on December 27, 2013. At some point in June 2013, plaintiff began experiencing "severe pain and soreness in his mouth, teeth, and lower facial areas" and, after "repeated verbal requests," filed a written request for a dental examination on June 7, 2013. Nurse Mason placed his name on the "dental list" that same day.

After a month and a half passed without word from the dentist, Plaintiff filed an inmate grievance citing First Med's failure to provide the requested medical care. Custodial officers forwarded the grievance to First Med, leading to a follow-up examination by Nurse Williams on July 23, 2013. This was Plaintiff's first in-person examination since filing the written medical request 48 days earlier. The report reveals complaints of a "sore/broken" tooth, and a "slightly red with yellow raised area" on the lower right jaw. Nurse Williams declined to order bloodwork, x-rays or images, but did prescribe seven days of penicillin and ibuprofen.

Plaintiff continued to complain and eventually received a second in-person examination on July 30, 2013, this time by Nurse Peterson, LPN.[1] She declined to order x-rays, images, or bloodwork, citing the absence of any visible "bleeding, swelling, or redness." Plaintiff filed his second inmate grievance the following day, claiming the pain had become "so intense [his] nose [was] bleeding," his eyesight was blurred, and it had become difficult to swallow. The grievance requested ibuprofen "to release pain and pressure until [the] dentist could get [there]." Custodial officers forwarded the complaint to the medical staff and Nurse Timbrook denied the request

---

[1]    Plaintiff refers to the individual as "Sherri Peterson, LPN," medical records, however, reveal the nurse's actual name is Susan Peterson, LPN.

based on Nurse Peterson's July 30, 2013 report and the fact that Plaintiff was already on the "dental list."

Plaintiff received his third in-person medical examination, the second from Nurse Williams, on August 18, 2013. Despite the fact that the examination revealed an extremely tender "raised pocket" on Plaintiff's upper palette, no imaging or x-rays were ordered. Plaintiff was given additional ibuprofen.

Plaintiff received his first dental exam on August 21, 2013, more than two months after initially having his name placed on the dental list. Jail records indicate that Dr. Roberts preformed the examination with the assistance of Nurses Mason and Hippler.[2] No diagnostic tests were performed and no images or x-rays were taken, Plaintiff received a new order for ibuprofen and a follow-up appointment on the dental list. Convinced that the on-going symptoms meant something serious must be wrong, the Plaintiff filed a second Inmate Sick Call form two days later, complaining of tooth pain, migraines, and nose bleeds and requesting a follow-up dental examination.

Sheri Cable, LPN ("Nurse Cable") administered Plaintiff's fifth examination on September 12, 2013, and based on the Plaintiff's noticeably red and swollen mouth, referred the Plaintiff to the presiding physician's assistant, Mr. Thomason. Mr. Thomason's follow-up examination on September 18 revealed a "long lesion" and "tender pink swollen area [on Plaintiff's] upper palate" surrounded by dying flesh and an "abscess." Aside from changing

---

[2] The Court notes that Plaintiff's complaint and response in opposition to the motion for summary judgment question whether he "ever saw an actual dentist" and claim "Dr. Roberts does not meet the physical description of anyone [Plaintiff] recalls encountering during his sentence," but finds the record wholly devoid of any evidence supporting those contentions. Medical records clearly indicate that Plaintiff was seen by Dr. Roberts on two occasions, August 21, 2013 and September 25, 2013.

Plaintiff's antibiotics, it is unclear what, if any, additional treatment Plaintiff received from Mr. Thompson.

The Plaintiff saw Dr. Roberts on September 25, 2013. The record from that visit reflects simply that the inmate would be getting out in a few weeks and that he wanted to see a dentist at that time. Three days after the follow-up dental examination, Plaintiff filed his third Inmate Sick Call claiming "infection worse than ever, all teeth loose, nasal closed up, [and suffering] migraine headaches." On October 2, 2013, Dan Hartley, LPN ("Nurse Hartley") observed "severe dental issues [were] preventing [Plaintiff] from chewing" and causing significant weight loss. Presented with the foregoing facts, Mr. Thomason agreed to "have imaging performed on [Plaintiff's] mouth" and scheduled a CT scan for October 7, 2013. Plaintiff filed his fourth Inmate Sick Call on October 5, 2013, noting the nasal infection had "spread[] through [his] face" and requesting an immediate trip to the emergency room in hopes of avoiding permanent damage.

The October 7, 2013 CT scan revealed a 45-by-45 millimeter mass "eroding into surrounding bone and . . . [the] anterior mandible, with extension into the roots of multiple teeth." Mr. Thomason received news of the results on October 10, 2013, but failed to take any action. Plaintiff filed his fifth Inmate Sick Call two days later, explaining that he needed "to see a doctor" because he couldn't swallow or chew food." He again received no response. Plaintiff's first and only trip to the emergency room came on October 16, 2013, when the in house medical staff was unable to stop one of his nose bleeds. This visit was six days after Mr. Thomason had been provided with the results of Plaintiff's CT scan. The emergency room physician noticed a large deformity on Plaintiff's left pallet, ordered a follow-up appointment with an "ENT specialist," and prescribed narcotic pain medicine. Sevier County released

4

Plaintiff from custody after it learned the severity of his condition—an oral cancer known as squamous cell carcinoma.

Plaintiff filed the current action on July 24, 2014 asserting deliberate indifference and intentional infliction of emotional distress. Before the Court now is Sevier County's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed below, the motion will be **GRANTED** and corresponding claims will be **DISMISSED WITH PREJUDICE**. All remaining non-dispositive motions will be **DENIED as moot**.

II.     **ANALYSIS**

    A.     **Standard of Review on Motion for Summary Judgment**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper wherever the movant shows the absence of any genuine material dispute and an entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is not entitled to a trial merely on the basis of allegations," *Curtis v. Universal Match Corp.*, Inc., 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317), but instead must point to evidence in the record upon which a reasonable juror could find in his or her favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## B. Section 1983 Deliberate Indifference Claims

Section 1983 plaintiffs bear the burden of establishing the deprivation of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992*); see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere."). In the Eighth Amendment medical context, this requires evidence that "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, under the *Estelle* standard, "[a] constitutional claim for denial of medical care has [both] objective and subjective components." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).

The objective component requires proof the inmate is suffering from a sufficiently serious medical need, such that "he [was] incarcerated under conditions posing a substantial risk of serious harm." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To be sufficiently serious, the medical need must be either (1) obvious to a layperson or (2) supported by medical evidence, like a physician's diagnosis. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995). With regard to the former, the question is whether an average person without specialized medical training would easily recognize the need for immediate professional treatment by observing the person or being told of his symptoms. *Johnson v. Karnes*, 398, F.3d 868, 874 (6th Cir. 2005).

The subjective component requires proof that the prison official possessed a sufficiently culpable state of mind. *Bargery*, 207 F.3d at 867. "A defendant possess[es] a sufficiently culpable state of mind when he acts with deliberate indifference." *Carter v. City of Detroit*, 408 F.3d 305, 312 (6th Cir. 2005), *abrogated on other grounds in Pearson v. Callahan*, 555 U.S. 223 (2009). Conduct undertaken with "'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Karnes*, 398 F.3d at 875 (quoting *Farmer*, 511 U.S. at 836). Thus, deliberate indifference requires more than mere negligence; it requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839–40). To prove this subjective standard, a plaintiff must provide sufficient grounds for a reasonable juror to find that the defendant: (1) "perceived the facts from which to infer substantial risk to the prisoner," (2) "did in fact draw the inference;" and (3) "then disregarded that risk." *Id.* at 591 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

### 1. Municipal Liability Claim

#### a. Sevier County, Tennessee

When a § 1983 claim is made against a municipality, the Court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by an underlying constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Sevier County contests Plaintiff's ability to satisfy either prong. Thus, the Court's first task is to determine whether Plaintiff has identified sufficient grounds for a reasonable juror to conclude he suffered an underlying constitutional injury. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2011) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable.").

#### i. Injury Resulting From Violation of Constitutional Rights

##### 1. Larry McMahan and Ronald Seals

Proclaiming that the sheriff and jail administrators "wield[] ultimate responsibility over the Sevier County Jail", Plaintiff argues Defendants McMahan and Seals "knew or should have known" subordinates were "engaging in . . . deliberate indifference" but "failed to take action to prevent said subordinates form engaging in such conduct." Since it is well established that § 1983 does not support imposition of vicarious liability, *Siler v. Webber*, 443 F. App'x 50, 53 (6th Cir. 2011), the Court interprets the foregoing claim as advancing a theory of supervisory liability.

"[S]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act . . . and cannot be based upon simple negligence." *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *see also Gulett v. Haines*, 229 F. Supp.

2d 806, 813 (S.D. Ohio 2012) ("Given the fact that § 1983 does not contemplate vicarious liability claims, liability must be premised on some other ground, presumably supervisory liability or municipal liability."). Instead, the plaintiff must show that the supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Leach*, 891 F.2d at 1246. Thus, supervisory liability consists of two separate components: (1) underlying unconstitutional conduct by a supervised employee and (2) some affirmative, unconstitutional conduct on the part of the supervisor in the form of authorization, approval, or knowing acquiescence. *Compare Curry v. Scott*, 249 F.3d 493, 505–06 (6th Cir. 2001), *abrogated on other grounds by Jones v. Bock,* 548 U.S. 199 (2007) (concluding summary judgment was properly denied where trier of fact could find, based on the evidence submitted, that the supervisory defendants actually knew the officer posed a substantial risk of harm to prison inmates); *with Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002) (finding supervisors were not liable because they possessed no information indicating a strong likelihood of unconstitutional conduct by their subordinate).

The Court finds that it need not address whether Plaintiff has satisfied the first prong because he has failed to identify any evidence which a reasonable trier of fact could interpret as supporting the second. Nothing in the record suggests Defendant McMahan or Defendant Seals had knowledge of Plaintiff's condition or the course of treatment adopted by First Med and its employees. The omission is fatal to Plaintiff's claim because it prevents him from establishing the individualized deliberate indifference required to hold someone independently liable under § 1983. *See e.g., Petty v. Cty. of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007) (finding sheriff not liable in his individual capacity under theory of supervisory liability where there was no evidence he was in any way directly involved in the delay in medical care); *Warren v. Shelby*

*Cty.*, 191 F. Supp. 2d 980, 983 (6th Cir. 2001) (dismissing claim against Sheriff pursuant to Rule 12(b)(6) where plaintiff failed to plead any facts indicating direct involvement or individualized deliberate indifference).  Neither individual's conduct proves an underlying constitutional harm.

### 2.  Virginia Mason, LPN and Donna Hippler, LPN

Plaintiff claims Nurses Mason and Hippler violated his Eighth Amendment rights by failing to obtain x-rays, diagnostic testing, or imaging.  Even with all reasonable inferences drawn in his favor, the record only mentions Nurse Mason twice and Nurse Hippler once. Nurse Mason complied with Plaintiff's original June 7, 2013 request to be placed on the dental list and later assisted Dr. Roberts with his August 21, 2013 dental examination.  The only mention of Nurse Hippler is her joint participation in the August 21, 2013 dental examination.[3]  Neither party contests that Mason and Hippler took Plaintiff's vital signs and documented Dr. Robert's orders for penicillin and ibuprofen or that Plaintiff's symptoms at the time involved an extremely tender "raised pocket" accompanied by sporadic nose bleeds.  The Court finds the foregoing facts insufficient to establish an Eighth Amendment violation.

Plaintiff's condition would not be diagnosed as oral cancer for several more months and none of the symptoms present during his interactions with Nurses Hippler or Nurse Mason were sufficiently alarming to put a lay person on notice of the severity of his condition.  *See Smalley v. Hininger*, No. 1:14-0028, 2015 U.S. Dist. LEXIS 88544, at *12 (M.D. Tenn. July 8, 2015) (finding self-reported headaches, lightheadedness, and nosebleeds did not satisfy objective prong of deliberate indifference claim); *Hendricks v. Cuyahoga Cty. Bd. of Comm'rs*, No. 1:14-CV-

---

[3]     To the extent Plaintiff suggests in his complaint Nurse Hippler participated in his September 25, 2013 follow-up dental examination, medical records demonstrate that Nurse Cable, not Nurse Hippler, was the assisting nurse.

1890, 2015 U.S. Dist. LEXIS 20146, at *13 (N.D. Ohio Feb. 17, 2015) ("A headache, temporary nausea and mild nosebleeds are not objectively serious medical conditions.").

Further, nothing in the record suggests Nurse Mason or Nurse Hippler had subjective knowledge of the severity of his condition or perceived the facts from which to infer substantial risk to the prisoner. In the absence of such knowledge, Plaintiff attempts to focus only on the inadequacy of the treatment received when viewed in light of his subsequent diagnosis. The Sixth Circuit has made clear, however, that "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). The Constitution does not guarantee a prisoner the treatment of his choice. *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). Thus, even if treatment provided during the August 21, 2013 dental examination fell below professional standards, Plaintiff's status as a prisoner does not constitutionalize the malpractice claim. *See Estelle*, 429 U.S. at 105–106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Karnes*, 398 F.3d at 875 (noting "when a prison doctor provides treatment, albeit carelessly or inefficaciously, . . . he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation").

### 3.  Daniel Roberts, DDS

The record references two interactions between Plaintiff and Dr. Roberts: the August 21 and September 25 "dental examinations." He goes on to suggest that the same "records fail to indicate any meaningful examination" actually took place and concludes that the failure to order additional diagnostic tests, images, or x-rays amounted to deliberate indifference.

Even assuming Plaintiff's condition was sufficiently serious by the September 25, 2013 follow-up examination so as to put a lay person on notice that he faced "a substantial risk of serious harm" without alternative medical treatment, the absence of any evidence suggesting Dr. Roberts subjectively perceived the totality of symptoms necessary to infer the substantial risk is fatal to Plaintiff's claim. *See Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) ("Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference."); *see also Lott v. Swift Transp. Co.*, 694 F. Supp. 2d 923, 928 (W.D. Tenn. 2010) (noting complaint must set forth facts sufficient to give rise to a plausible, not merely possible, claim for relief and bare recitation of claim elements is insufficient). Plaintiff's complaint that Dr. Roberts should have done more than prescribe pain medication and schedule a follow-up examination sounds in medical malpractice, not under § 1983. *See e.g.*, *Burgess v. Fisher*, 735 F.3d 462, 476 (6th Cir. 2013) (noting where plaintiff receives some treatment and the dispute is over its adequacy, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law" (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.6 (6th Cir. 1976)); *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005) (explaining a prison official's "failure to alleviate a significant risk that he should have perceived but did not cannot . . . be condemned as an infliction of punishment.") To the extent Plaintiff seeks to hold Dr. Roberts independently liable for the conduct of nurses under his supervision, the failure to establish an underlying Eighth Amendment violation precludes supervisory liability. *See Poteet v. Polk Cty.*, No. 1:05-CV-309, 2007 U.S. Dist. LEXIS 28066, *41-43 (E.D. Tenn. Apr. 16, 2007) (noting supervisory liability claim requires proof of an underlying violation by supervised employee).

### 4. Jessie Timbrook, LPN and Timothy Thomason, PA

Plaintiff articulates two theories of § 1983 liability for Nurse Timbrook and Mr. Thomason; direct and supervisory. With regard to direct liability, Plaintiff argues both Defendants were personally indifferent towards his medical condition. With regard to supervisory liability, Plaintiff notes First Med employed Nurse Timbrook as "LPN supervisor" and Mr. Thomason as supervising on-site physician assistant, alleging both individuals exercised supervisory control over the various nurses attending to Plaintiff over the course of his incarceration. He further claim that both individuals purposefully ignored unconstitutional conduct by Mason, Hippler, and other "subordinates" despite pre-existing knowledge those individuals had a history of "disregarding . . . substantial risk[s] of serious harm" to inmates.

The record's only references to individual conduct by Nurse Timbrook involve her handling of Plaintiff's July 31, 2013 inmate grievance and multiple alleged promises to take him to get x-rays. With regard to the former, Plaintiff suggests she "dismissively responded" to his request for ibuprofen without ever "under[taking an independent] evaluation of [his] condition." Even if true, no reasonable juror could conclude that Plaintiff's condition was sufficiently serious at the time of Nurse Timbrook's conduct to satisfy the objective prong of a deliberate indifference claim. Plaintiff's condition had not yet been diagnosed as oral cancer and his symptoms at the time of Nurse Timbrook's conduct—occasional nose bleeds, swollen gums, headaches, and nasal pressure resulting in blurred eyesight—were not such that a lay person would be on notice that his or her failure to administer an independent medical examination placed Plaintiff at significant risk of harm. *See Smalley*, 2015 U.S. Dist. LEXIS 88544, at *12 (finding prisoner's self-reported headaches, lightheadedness, and nosebleeds were not sufficiently serious condition to satisfy objective prong of deliberate indifference claim);

*Hendricks*, 2015 U.S. Dist. LEXIS 20146, at *13 ("A headache, temporary nausea and mild nosebleeds are not objectively serious medical conditions."); *Davidson v. Scully*, 155 F. Supp. 2d 77, 82 (S.D.N.Y. 2001) (finding seasonal headaches, earaches, sinus congestion, soreness in his throat and eyes, tearing, and nasal infections did not constitute objectively serious medical need under the Eighth Amendment). Even assuming Petitioner were able to satisfy the objective prong of a deliberate indifference claim, the complete absence of evidence suggesting Nurse Timbrook had subjective knowledge of the risk precludes the requested relief. *See Karnes*, 398 F.3d at 875 (noting a "plaintiff alleging deliberate indifference must show more than negligence or misdiagnosis of an ailment").

The case against Mr. Thomason is a bit more robust. First, as the lead supervisor of First Med's medical staff Mr. Thomason signed-off on every one of Plaintiff's nursing visits and, as a result, had actual knowledge of his progressively worsening condition. Plaintiff argues the progressively increasing severity of his symptoms—a "red and yellow" raised pocket on the roof of his mouth, tooth aches, and migraines giving way to dying flesh, an abscess, swollen gums, and loose teeth, put Mr. Thomason on notice of the severity of his condition. He goes on to note that Nurse Harley informed Mr. Thomason of her concern about Plaintiff's weight loss and what might be a "tumor" several weeks before the latter authorized a trip to the emergency room, arguing that this information combined with subsequent receipt of the CT scan results on October 12, 2013 demonstrate a conscious disregard for the risks inherent in delaying Plaintiff's trip to the emergency room until October 16, 2013.

The Court finds that the foregoing facts provide sufficient basis for a reasonable juror to conclude that Mr. Thomason's conduct amounted to a reckless disregard for an objectively serious medical condition. *See Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992) (explaining

14

personal, not supervisory, liability attaches where supervisor tasked with specific medical duties, such as reviewing and responding to inmate medical needs, abandons his duties in the face of actual knowledge of the inmates serious medical condition). The Sixth Circuit has made clear that delays in access to medical care can serve as the basis for imposing liability under § 1983. *See Byrd v. Wilson*, 701 F.2d 592, 595 (6th Cir. 1983) (finding nine hour delay of medical care after clear notice of obvious medical need actionable); *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972) (same); *see also Bunton v. Englemyre*, 557 F. Supp. 1 (E.D. Tenn. 1981) (finding judgment). Any attempt to distinguish the current case based Plaintiff's receipt of some medical care fails because prior provision of some treatment does not prevent a deliberate indifference claim grounded in delays to reasonable care after the true nature of the condition is diagnosed or becomes obvious. *See Westlake*, 537 F.2d at 860 (finding viable action where prisoner allege[d] prison authorities denied reasonable requests for medical treatment in the face of an obvious need for such attention [and] . . . thereby exposed [the prisoner] to undue suffering.").

As discussed in the proceeding sections, Plaintiff has failed to set forth sufficient facts to establish an underlying constitutional violation by Nurse Mason, Nurse Hippler, Dr. Roberts, or Nurse Timbrook. The medical staff attended to Plaintiff on numerous occasions throughout his incarceration, each request to be placed on the dental list was honored, albeit slowly, and with limited exception, antibiotics were supplied. To the extent Plaintiff attempts to rely on the conduct of Nurse Williams, Nurse Peterson, or Nurse Cable as a source of constitutional injury, he has failed to present evidence sufficient to do so. *See Brinton v. Gaffney*, 554 F. Supp. 388, 389 (E.D. Pa. 1983) (dismissing prisoner Eighth Amendment claim where prisoner received some medical care); *Stackhouse v. Marks*, 556 F. Supp. 270 (M.D. Pa. 1982) (finding no Eighth Amendment claim where defendant visited medical personnel approximately 40 times for

treatment). Plaintiff's failure to satisfy the first prong of supervisory liability—violation of a constitutional right by a supervised employee—obviates the need to examine whether he has satisfied the second. S*ee McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) (noting prerequisite for claim based on supervisory liability is underlying unconstitutional conduct by supervised employee); *Reese v. Peiss*, No. 11-CV-10208, 2011 U.S. Dist. LEXIS 114094, at *14 (E.D. Mich. Sept. 20, 2011) ("Supervisory liability under § 1983 cannot attach where there is no underlying unconstitutional conduct, such as where the only allegation of liability is based upon a mere failure to act."); *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 841 (E.D. Tenn. 2011) (dismissing claim against supervisor where there was no underlying constitutional violation).

### 5. Unnamed Correctional Officers

In addition to the foregoing, Plaintiff appears to suggest that multiple officers employed by Sevier County, and Lieutenant Loveday in particular, violated his Eighth Amendment rights by "ignoring" grievances. He appears to suggest several officers with notice of the grievances demonstrated a deliberate indifference to his condition by forwarding the complaints to First Med employees instead of undertaking unspecified, independent remedial action. Sevier County argues that the alleged conduct falls short of an Eighth Amendment violation, arguing Plaintiff has failed to present any evidence suggesting the officers recognized the severity of his condition or demonstrated indifference by relaying medical-related complaints to the Sevier County Jail's medical professionals.

Plaintiff's first two grievances were filed prior to August 1, 2013, well before the severity of his condition was diagnosed or obvious to persons untrained in the medical field Failure to put forth evidence demonstrating the alleged indifference took place in the face of an

objectively serious medical condition necessarily precludes relief. *See e.g.*, *Kosloski v. Dunlap*, 347 F. App'x 177, 180–181 (6th Cir. 2009) (rejecting Eighth Amendment claim where decision to ignore grievance was made without subjective knowledge of risk or in presence of objectively serious medical condition); *Bueno v. Scott*, No. 2:12-cv-00809, 2014 U.S. Dist. LEXIS 147939, at *31–34 (S.D. Ohio Oct. 16, 2014) (granting summary judgment absent objectively serious medical condition).

Plaintiff's third grievance notified prison officials of the nearly two month delay between his initial request to see a dentist and first dental exam. It went on to request a follow-up examination based on the fact that his symptoms—severe pain with all his teeth loose and an infected nasal passage—had not subsided. Both Nurse Hartley's follow-up examination the following day and Mr. Thomason's decision to schedule the October 7, 2013 CT scan were direct consequences of the correctional officers' decision to forward Plaintiff's third grievance. No reasonable juror presented with the above information could find that challenged conduct— complying with Plaintiff's request for a follow-up medical examination by forwarding the request to those staff members tasked with the provision of medical care—amounted to "disregard" of a serious risk of harm. *See Perez v. Oakland Cty.*, 466 F.3d 416, 426 (6th Cir. 2006) (explaining that a plaintiff only establishes deliberate indifference by showing that the defendant chose to disregard the risk of serious harm); *see also Harrison v. Ash*, 539 F.3d 510, 518–20 (6th Cir. 2008) (finding that corrections officers were not deliberately indifferent because they notified medical personnel of inmate's self-reported medical condition).

The fourth and final Inmate Grievance reiterated complaints about the nearly-three-month-long delay between requesting and seeing the dentist. The custodal staff's decision to defer to the ongoing treatment decisions of the medical professionals tasked with Plaintiff's care

falls significantly short of the deliberate indifference required to succeed on an Eight Amendment claim. *See Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009) (rejecting deliberate indifference claim against custodial staff where decision to not transport prisoner to the hospital was based on fact that the EMTs and jail nurse, "observed [the prisoner's] behavior and administered tests based on those observations"); *Mitchell v. Hininger*, 553 F. App'x 602, 607 (6th Cir. 2014) (finding officer did not act in a deliberately indifferent manner by declining to intervene in course of medical care based on perceived delays because, as a lay person, the officer was entitled to rely on the medical staff's medical judgments). The Sixth Circuit has made clear that there is nothing unconstitutional about custodial employees "rely[ing] on . . . medical judgments made by medical professionals responsible for prisoner care." *Graham*, 358 F.3d at 384; *see also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (explaining denial of grievance does not by itself support a deliberate indifference claim).

## ii. Municipal Responsibility for Violation

Having identified the sole potential source of underlying constitutional injury—Mr. Thomason's inaction in the face of Plaintiff's CT results and increasingly serious symptoms—the only remaining question is whether Plaintiff has submitted sufficient evidence to establish the second prong of municipal liability—Sevier County's responsibility for the violation. *See Collins*, 503 U.S. at 120 (describing second prong as "whether the municipality is responsible for [the underlying constitutional] violation").

Respondeat superior is not a viable theory of liability under § 1983, *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 101 (6th Cir. 1991), and, as a result, Sevier County can only be held responsible if the underlying violation arose from an act taken pursuant to one of its municipal policies or customs. *Id.*; *see also Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658,

708 (1978) (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of [its] official policies or established customs"). To make such a showing, the plaintiff must submit evidence (1) identifying an articulable policy or custom, (2) connecting that policy or custom to the municipality, and (3) showing that he incurred his constitutional injury due to execution of the identified policy. *See e.g.*, *Gregory v. Shelby Cty.*, 220 F.3d 433, 441 (6th Cir. 2000), *overruled on other grounds in Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) (explaining the third prong requires proof that municipal conduct "was the moving force behind [his] injury"). Examples of municipal polices and customs include: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Spears*, 589 F.3d at 256.

Plaintiff asserts two theories of municipal liability. First, he argues that Sevier County's grievance system was itself constitutionally inadequate because it failed to comply with the minimum standards set forth in the Tennessee Minimum Correctional Standards. Second, Plaintiff cites numerous First Med policies as the source of his injury and argues that those same policies should be imputed to Sevier County in accordance with *Ancata v. Prison Health Servs. Inc.*, 769 F.2d 700, 704–5 (11th Cir. 1985).

### 1. Policies Originating with Sevier County

As an initial matter, the Court finds Plaintiff cannot rely on Sevier County's alleged non-compliance with "Tennessee Minimum Correctional Standard No. 1400-01-.05(10)" as evidence of an independent municipal custom responsible for his underlying constitutional injury. The

entirety of Plaintiff's discussion regarding the Sevier County grievance system revolves around Lieutenant Loveday's decision to forward all four medical-related grievances to the First Med employees. Nowhere in the record does he discuss the structure of the system itself or ways in which the system deviates from standards outlined in Tennessee Minimum Correctional Standard No. 1400-01-.05(10).[4] While the mere allegation of non-compliance might have been enough to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), failure to supplement his assertion with evidence is fatal under Federal Rule of Civil Procedure 56. *See Anderson*, 477 U.S. at 249 (noting the nonmoving party on summary judgment "may not rest on his pleadings, but must come forward with evidence from which a rational trier of fact could find in his favor").

While the municipal contract itself undoubtedly constitutes a cognizable "official agency policy," nothing in the record suggests Thomason's compliance with the terms of that contract "caused" the Eighth Amendment violation. *See Graham*, 358 F. 3d at 384–85 (characterizing contract with medical provider as an official policy but explaining existence of such contract does not render municipality liable for constitutional violations of subcontractor and its employees unless their violation "resulted from" adhering to the contract). In other words, Plaintiff has failed to establish a "direct causal link" between the terms of the contractual agreement and Thomason's deliberate indifference. *Spears*, 589 F.3d at 256 (noting evidence of a "direct causal link" is necessary to show that the municipality's conduct—adoption of the

---

[4]     Plaintiff's expert report contains the record's sole reference to this subject, citing the American Correctional Association ("ACA") Performance-Based Standards and Tennessee Correctional Institute ("CI") Minimum Standards as requiring (1) an inmate grievance procedure containing at least one level of appeal and (2) notification of a designated medical authority in instances where a prisoner may be in need of medical treatment. Failure to include individualized discussion of Sevier County's grievance system or the ways in which that system deviates from the ACA and CI standards, necessarily means that Plaintiff has failed to meet the threshold step of establishing municipal liability—identifying an articulable policy belonging to the defendant municipality.

contract—was the "moving force" behind the plaintiff's underlying constitutional injury (citing *Graham*, 358 F.3d at 383)). Plaintiff's failure to identify specific provisions of the Sevier County-First Med agreement or present an articulable theory regarding how those terms caused the underlying injury necessarily precludes a verdict in his favor. *See City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (explaining no municipal liability attaches where "an otherwise sound [policy] has . . . been negligently administered"); *Kosloski*, 347 F. App'x at 180–81 (denying municipal liability claim where non-negligent adherence to the policy would have resulted in appropriate diagnosis).

### 2. Policies Originating with First Med

Plaintiff's response cites four First Med policies and customs as grounds for imputing municipal liability to Sevier County: (1) a custom of denying inmates with potentially life-threatening medical conditions, like oral cancer, proper diagnostic testing; (2) a custom of denying inmates with painful oral lesions access to an "actual physician" capable of making an accurate "medical referral;" (3) a policy utilizing "underqualified licensed practical nurses ("LPNs") to treat inmates regardless of the seriousness of their medical condition;" and (4) a policy allowing LPNs to work outside the scope of their licensure by administering medications without physician oversight. He goes on to argue that all four policies or customs should be treated as if they originated with Sevier County under the doctrine recognized in *Ancata*, 769 F.2d at 704–5.

At the onset, the Court notes that Plaintiff has failed to establish the existence of his first proposed "custom." Establishing a custom for purposes of municipal liability requires evidence of a course of conduct that, although not authorized by law, is so permanent and well settled as to virtually constitute law. *Andrew v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see*

*also Barcume v. City of Flint*, 819 F. Supp. 631, 654 (E.D. Mich. 1993) (same). No such showing has been made in the current case because the record lacks any evidence suggesting First Med had a history of "den[ying] inmates with potentially life-threatening medical conditions . . . a proper diagnosis." The omission necessarily precludes relief. *See e.g.*, *Kosloski*, 347 F. App'x at 180–81 (rejecting municipal liability absent "evidence that the alleged failure to meet [the plaintiff's] medical needs was anything other than an isolated incident"); *Ronayne v. Ficano*, No. 98-1135, 1999 U.S. App. LEXIS 4579, at *4–5 (6th Cir. Mar. 15, 1999) (rejecting municipal liability where the plaintiff failed to establish a "history of misdiagnosis of fractures or delay in treating fractures"); *see also Right-Now Recycling, Inc. v. Ford Motor Credit Co.*, No. 1:11-cv-364, 2014 U.S. Dist. LEXIS 182828, at *13 (S.D. Ohio Oct. 1, 2014) (explaining plaintiffs have the burden of establishing the existence of their proposed municipal custom).

Plaintiff's second, third, and fourth policies amount to varying articulations of the same proposed policy—use of LPNs to respond to Inmate Sick Calls instead of "actual physicians" where the latter group are the only providers capable of "making the right medical referral[s]."

While courts are free to impute policies of a private subcontractor to the contracting municipality wherever the latter imbues the former with final decision making authority, *Ancata*, 769 F.2d at 705; *see also Moldowan v. City of Warren*, 578 F.3d 351, 394 (6th Cir. 2009) (noting that "official policy" requirement did not preclude municipal liability "for a single decision by municipal policymakers under appropriate circumstances" (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)); *Cuyahoga Cty. v. State Auto. Mut. Ins., Co.*, No. 1:08-CV-01339, 2012 U.S. Dist. LEXIS 153794, at *15–16 (N.D. Ohio Oct. 25, 2012) (explaining "the county itself remains liable for any constitutional deprivations caused by the policies or customs of the

22

[private medical provider]"); *Lowe v. Cuyahoga Cty.*, No. 1:08-CV-01339, 2011 U.S. Dist. LEXIS 150774, at 28–30 (N.D. Ohio Dec. 8 2011) (finding county liable under theory of municipal liability based on unconstitutional policies of medical subcontractor with final decision making authority); *Martin v. Corr. Corp. of Am.*, No. 05-2181, 2006 U.S. Dist. LEXIS 5064, at *15–17 (W.D. Tenn. Jan. 17, 2006) (denying municipality's motion to dismiss where plaintiff pled facts suggesting medical subcontractor's policies violated his Eighth Amendment rights), nothing in the *Ancata* progeny obviates *Monell*'s requirement of evidence establishing a direct causal relationship between the identified, imputable policy—in this case the policy of a subcontractor with final decision making authority—and the plaintiff's underlying constitutional injury. *See Doe v. Claiborne Cty.*, 103 F.3d 495, 505–06 (6th Cir. 1996) (explaining each plaintiff bears the burden of proving that the identified municipal policy "inflict[ed] the injury" complained of (citing *Monell*, 436 U.S. at 694)).

Even if, as Plaintiff contends, First Med policy required LPNs conduct initial evaluations for every Inmate Sick Call, and even if by so requiring First Med permitted LPNs to evaluate medical conditions requiring treatment that Tennessee law does not permit them to give, nothing in the record connects those alleged defects with the underlying unconstitutional conduct—Thomason's post-diagnosis deliberate indifference. Failure to link the identified municipal policy and underlying constitutional injury necessarily preclude a verdict in his favor. *See Hamer v. Cty. of Kent*, No. 1:13-cv-504, 2013 U.S. Dist. LEXIS 186512, at *12–13 (W.D. Mich. Nov. 6, 2013) (rejecting municipal liability claim based on use of nurses to conduct initial medical examinations even though condition might have been diagnosed sooner under alternative care structure); *Kosloski*, 347 F. App'x at 180 (upholding use of nurses to triage inmate requests for medical care); *Wright v. Cty. of Franklin*, 881 F. Supp. 2d 887, 909–10 (S.D.

Ohio 2012) (characterizing reliance on custom of "allowing LPNs to independently assess and treat patients, thereby allowing LPNs to practice outside the scope of their expertise and statutory authorization under Ohio Law" as an "exceedingly weak" theory unable to survive summary judgment); *Graham*, 358 F.3d at 384–85 ("Even if, as Graham contends, the policy required jail personnel to defer to the medical decisions of SecureCare employees, and even if it permitted licensed practical nurses to make medical decisions that Michigan law does not permit them to make, those alleged defects are insufficient to hold the County liable."). Plaintiff's attempt to distinguish the current case by alleging First Med employees operated without proper physician oversight fails because the record is completely devoid of supporting evidence. *See Wright*, 881 F. Supp. 2d at 910 ("[W]ithout evidence of a custom of allowing LPNs to diagnose and treat inmates without supervision by registered nurses or licensed physicians, [the plaintiff] cannot show that the action of . . . the county was the 'moving force' behind the alleged constitutional violation."). It is possible First Med policy resulted in treatment falling below Tennessee's applicable standard of care. It is even possible that Thomason's conduct in-particular was so woefully inadequate that it rose to the level of a constitutional violation. Failure to link that violation to "implementation of" the allegedly faulty municipal policy, however, is fatal to Plaintiff's claim.[5]

---

[5]    While asserting that First Med employees violated his constitutional rights "pursuant to an official policy or longstanding practice or custom of . . . denying inmates appropriate medical attention" might be sufficient to survive a motion to dismiss, *see Lott*, 694 F. Supp. 2d at 928 ("Identifying the precise policy or custom may help make the complaint's allegations more plausible, but categorically viewing such a failure as dispositive in every case involving § 1983 claims risks imposing a higher standard of pleading than the federal rules of Civil Procedure mandate."), failure to produce evidence in support of that contention is fatal on summary judgment, *see Anderson*, 477 U.S. at 249 (noting the nonmoving party on summary judgment "may not rest on his pleadings, but must come forward with evidence from which a rational trier of fact could find in his favor").

An additional element of proof is required if Plaintiff hopes to rely on a failure to train theory of municipal liability. *Harris*, 489 U.S. at 388 (noting failure to train employee can "serve as the basis for § 1983 liability"). Because liability must be based on more than the right to control an employee, failure to train is only actionable where the municipality's conduct manifests a deliberate indifference to the plaintiff's condition. *Shehee*, 199 F.3d at 300. In other words, holding a municipal defendant liable under a failure to train theory requires that the plaintiff prove: (1) the existence of an inadequate training program; (2) that the inadequacy resulted from municipal deliberate indifference; and (3) the existence of a close causal relation between the inadequacy and underlying constitutional harm. *Plinton v. Cty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008). Satisfaction of the second prong typically requires proof of prior instances of unconstitutional conduct suggesting that the municipality ignored a history of abuse despite clear notice that the training in a particular area was deficient and likely to cause injury. *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2010). No such showing has been made in the current case. *See Broyles v. Corr. Med. Servs., Inc.*, No. 08-1638, 2009 U.S. App. LEXIS 5494, at *2 (6th Cir. Jan 23, 2009) ("[A]llegations of custom or policy, unsupported by any evidence are insufficient to establish entitlement to relief").

### C. Intentional Infliction of Emotional Distress

In addition to municipal liability under § 1983, Plaintiff seeks to hold Sevier County liable under a state-tort theory of intentional infliction of emotional distress. Sevier County is immune from such liability, however, and the claim fails as a matter of law.

Sevier County's liability for torts committed by its employees and agents is governed by the Tennessee Governmental Tort Liabilities Act ("TGTLA"). Tenn. Code Ann. §§ 29-20-101, *et seq*. The TGTLA codifies the Tennessee common law rule of sovereign immunity for

counties, municipalities, and other governmental entities. Tenn. Code Ann. § 29-20-201; *Limbaugh v. Coffee Medical Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001). In addition to affirming the general principle that counties in Tennessee are immune from civil suit, the statute creates certain exceptions or waivers to that immunity. *Doyle v. Frost*, 49 S.W.3d 853, 857 (Tenn. 2001); *see also Limbaugh*, 59 S.W.3d at 83 (explaining the TGTLA's waiver of sovereign immunity constitutes a derogation of Tennessee common law). Specifically, the TGTLA abridges government immunity for injuries "proximately caused by a negligent act or omission of any employee within the scope of his employment" with the exception of those injuries "aris[ing] out of . . . infliction of mental anguish . . . or [a violation of the plaintiff's] civil rights." Tenn. Code Ann. §29-20-205(2). Petitioner's claim—intentional infliction of emotional distress—falls outside the scope of the foregoing waiver for two reasons: (1) it does not allege negligent conduct, *Partee v. City of Memphis*, 449 F. App'x 444, 447 (6th Cir. 2011), and (2) infliction of mental anguish, violations of a plaintiff's civil rights constitute enumerated exceptions to the purposefully narrow scope of government liability, *see Campbell v. Anderson Cty.*, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010) (holding that governmental immunity protected county from liability for intentional infliction of emotional distress that was "predicated on the alleged violation of [the plaintiff's] civil rights by [an officer]").

## III.   RESOLUTION OF REMAINING NON-DISPOSITIVE MOTIONS

In addition to the immediate motion for summary judgment [Doc. 87], Sevier County filed a motion to "exclude testimony of Kathryn Wild" on December 1, 2015 [Doc. 107]. Plaintiff filed his own motion "to exclud[e] the opinions of Defendant['s] correctional expert" on December 9, 2015 [Doc. 113]. In light of this Court's resolution of the underlying claims, both motions [Docs. 107, 113] will be **DENIED as moot**.

## IV.    CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment [Doc. 87] will be **GRANTED** and the corresponding claims will be **DISMISSED WITH PREJUDICE**. All remaining non-dispositive motions will be **DENIED as moot**.

**ORDER ACCORDINGLY.**

_____
**UNITED STATES DISTRICT JUDGE**